Good morning, Your Honors. May it please the Court, my name is Deborah Smith. I represent the petitioner Patrick Favi. Patrick Favi is a 26-year-old native and citizen of Benin. He entered the US in 1991, a dependent on his mother's exchange student status. In 1999, at the age of 20, Patrick pleaded guilty in two separate misdemeanor possession of drug paraphernalia offenses in Montana, the first in January of 99 and the second in July. Shortly thereafter, in September, the former INS commenced removal proceedings against Mr. Favi. In those proceedings, Mr. Favi admitted that he had been convicted of the two offenses charged, and he conceded that those offenses are listed as removable offenses in Section 237A2Bi of the Immigration Act. Mr. Favi sought relief from removal in the forms of asylum, withholding of removal under the Act, and withholding of removal under the Convention Against Torture. The immigration judge and the BIA denied all forms of relief and ordered Mr. Favi removed, and now the issue of the merits of Mr. Favi's claims are before this Court. Preliminarily, before the Court may reach the merits, the Court needs to decide whether it has jurisdiction over Mr. Favi's case. This Court has jurisdiction over Mr. Favi's case. It's set forth in Section 247, excuse me, 242A1 and 242B. As Mr. Favi pointed out proactively in his opening brief, there is a not insignificant question of whether the Court is stripped of jurisdiction under 242A2. We would submit that the recent decision of the Ninth Circuit in the Unua-Kaulu case dispositively establishes that this Court has jurisdiction to hear the merits of Mr. Favi's claims, notwithstanding the criminal convictions. In the Court's previous decisions prior to Unua-Kaulu, which I should note that the panel that heard that case recently, just Monday of this week, amended that case and affirmed the same holdings and denied all ability to seek rehearing in the matter. So that is now established law in the circuit. The prior cases where the Ninth Circuit had denied or found it didn't have jurisdiction involved discretionary denials of relief. And that is not what is at issue in Mr. Favi's case. What is at issue are denials of non-discretionary matters. Mr. Favi alleges that the Court made statutory errors of law and that the Court made and that there were adverse credibility determinations made by the immigration judge that are not supported by substantial evidence. So finding that the Court has jurisdiction on the case, the Court reaches the merits of the claim. The government and Mr. Favi take significantly different views of what is at issue in the immigration judge's and board's opinion. I think we've all read that about 10 times. So we're probably interested in both sides' view of how do you treat the excised pages, but leave intact the remaining pages plus the opinion and the evidence. Well, I would say how Mr. Favi views the excised pages is that the excised pages deal specifically with the judge's findings that there was no nexus established, either to a particular social group or an imputed political opinion. The government apparently concedes that the immigration judge found that there was nexus. But what I believe is that it would be useful for the Court to address that issue because the nexus issue on both claims is so interwoven with the judge's denials or the findings of adverse credibility that I don't believe that the nexus opinion can, I don't believe it's impossible to establish nexus and make some of the adverse credibility findings that the judge made. Well, if we're going to have this dealt with, it would seem we'd send it back for them to review, don't you think? I'm sorry, Judge Fletcher. I have a cold, and I'm a little hard of hearing today. If we were to conclude that there wasn't any firm establishment of nexus or no nexus, would it not be best to send the case back for a determination of that? We shouldn't make that determination ourselves. Well, I would ask the Court to make that determination. Clearly, it's within your discretion to send the case back. And if that's what the panel deems appropriate, that, of course, is lawful for it to do, and we will accept that decision. However, the record is very complete. There were two days of extensive testimony taken of the petitioner and his mother. And there was a complete asylum application filed. There is enough information in the record to allow the Court, at least on the merits of the withholding claims under the Act and the Convention Against Torture, to reach the merits of those claims, as well as establishing qualification for asylum, and then a remand only on the discretionary issue of whether discretion should be used in creating asylum. If you give us that range, which may be permissible, why couldn't we just come to the opposite conclusion? I mean, I read this as saying that the immigration judge says that all the claims he makes, he doesn't find that the harm that is feared has been properly related to one of these five grounds. The immigration judge actually says that twice, and those are findings that are adopted by the BIA. So if the decision is that the various claims, however they may shake out, including the adverse credibility finding, isn't properly related to any one of five grounds, don't we then have an obligation to affirm if that's supported by evidence? If the Court finds there's no nexus, of course, you must affirm. However, I would argue that the board's conclusion there's no nexus supported by substantial evidence, that's what I understand the framework to be. I would say in response to that question, Judge Gould, that the board's finding that there was no nexus is not supported by substantial evidence. I would argue that Mr. Favi has established his membership in a particular social group, and he's established that he has a well-founded fear and is likely to be persecuted on account of imputed political opinion due to his mother. Well, okay, so we'll stop and take those separately. If we take the BIA, as Judge Gould said, at their word, because this is what they said in adopting the I.J.'s opinion, that they didn't find a relation between his evidence and the five grounds. With respect to the social group as to whether he's – whether it could be a social group or not, do we – if – is it that there isn't a social group or that he might not be persecuted as a result of being in that social group? If either one of those falls out as a result of the evidence, doesn't he lose that part of his claim? He would lose. However, I would say that the evidence doesn't establish what you have suggested, that – the judge agreed that he would be tortured. He used the word torture twice in his opinion, by the beating with the rubber whips. Regardless of the incident that happened with his young – Mr. Favi's younger sister, which he was three, the judge's – Right. Which the judge discounted as being preposterous, kind of. And he – but he said it's possible that the Respondent's father might punish him if he returns to Benin. Is that evidence sufficient to meet – I mean, is that conclusion sufficient to meet the standard necessary? I believe it is. I mean, the – What – what is the standard that he would need to meet in terms of the likelihood? That it would be more likely than not for withholding of removal or that he has a well-founded fear based on – based on both subjective and objective reasoning. I would like to reserve a few moments for argument – reply, and we're at the very end of it. I have you reserved unless there's any other questions. It's really just a few seconds. All right. We'll hear from Ms. Sarko. May it please the Court. This case presents two – two major questions. First is whether the Court – Lift the mic a little bit. Sure. Sorry. First is whether the Court lacks jurisdiction over the petition for review under 242a2c due to Mr. Favi's controlled substance convictions. We believe that he clearly falls under 237a2b1 for having a controlled substance offense, and therefore falls under 242a2c. And I don't think that's disputed by the Petitioner. Recently, the Court issued a decision in Oahualu – excuse me if I'm mispronouncing it – and – but it also had a prior decision in Ruiz-Morales. Although those cases involve aggravated felonies, Unuakaualu appears to say that if you – if it's an aggravated felony and the person's applying for withholding and the determination to deny it is on the merits and not on a discretionary decision, the Court retains jurisdiction over the withholding. Ruiz-Morales, we think, is directly contrary and takes a facial reading of the statute that under 242a2c, the Court doesn't have jurisdiction over the whole petition. And that would be – include any issues in it, including constitutional or other issues. So we believe basically that there's two panels, two decisions, and I don't know how the courts can resolve it. This is a really confusing area, certainly for me, and I think for most of us. Looking at the last case, the unpronounceable, what we gather from that is I think that you look at the various statutes and their requirements. For asylum, you barred if it's an aggravated felony, but they don't say anything about drugs. And so I think that's a really confusing area, and I don't know how the courts  And I don't know how the courts can resolve it, but I do believe that for withholding, it's in terms of grievous crime, and then for CAT, I'm not sure. There is no discussionary part to CAT. And basically, we think the – we've – since we went on the merits, we did not petition for rehearing it in Oahu Island. Right. But we do believe the Court's holding in that decision is incorrect. Well, but that's the law here, so I'm trying to figure out how that case precisely fits with this case. With this case. Yes. This is a case where we've got a drug conviction. Right. But not Agfel. And I think that would preclude any relief for removal, I think. I think we would be barred if they – if they denied him removal because of the drug convictions. I don't think we review that. Right. And he was denied removal because of the drug convictions. Yes. But then we move to the other ancillary reliefs, and it seems to me that we can review asylum and withholding and CAT as I read that case. Now, you may think it's wrong, and it may be wrong, but – Well, they didn't cite – you're talking about Ruiz-Morales as being – They didn't cite that. They didn't cite that. So now, if you could just help me again on that case, if we were to apply your reading of that case. Our reading of that case, it's the pure facial analysis. If the person falls within one of the criminal provisions listed in 242C, A2C, then the court is limited in its jurisdiction. It doesn't have jurisdiction over the petition or any issues contained therein, including asylum, withholding, and CAT or constitutional issues. And that's our reading of that case. Well, I guess we'll go back and we'll look at the two cases, and our only solution, if we thought they were in conflict, of course, would be to have some kind of in-bank process. So let's just assume for talking purposes that we have jurisdiction so we can at least go to the second part. Sure. This is a very confusing record to me, trying to figure out what is the decision. So if you could address two things. One, what do you think the actual decision was? And then how do we judge that decision in light of the record, particularly when there's a couple parts of the findings that went by the wayside? Right. I have a question. First, I guess I want to clarify or brief, because I'm not sure it was clear in there. From our reading of the Board's decision as it relates to the immigration judge's decision, the Board seemed not the Board let's see, let me find the exact wording. We agree with the immigration judge insofar as he determined from pages 4 through 17 and page 20 that he had not established eligibility for relief that he seeks. We believe that the pages that were left out deal with the nexus between basically the on account of part. Was it on account of political opinion or membership in a social group? And that the Board didn't reach it. They do deal with that in part. But on page 17, it deals with that. Look at the bottom of page 17. Seems like the Board is twice, like the ideas of being on page 17 seems to be saying expressly that there's no nexus. So why hasn't the Board adopted the language on page 17 that they refer to in their findings? The bottom paragraph says the court finds that there is a problem with these claims as to relationship to one of the five grounds. The court does not really find that the harm that, and then it's, I guess that is feared, has been properly related to any one of the five grounds. So at least maybe I'm missing something, but it seems to me that the Board of Immigration Appeals has adopted those two sentences. And then it goes on on page 20, just to add, it finds that the respondent failed to establish a well-founded fear of persecution in Benin based on one of the five grounds. Kind of echoing page 17. Well, I'm trying to understand why the government's giving that point away. I think basically we were reading it that this discussion at the bottom of 17, basically they meant to cut it off at that period, you know, above that. And then when the board goes on to the board said we agree with the immigration judge pages four through 17 and 20, the government thinks that the board just meant page four through the first top paragraph on page 17, but not the bottom paragraph. It's just, it seems to me it's a strange reading by the government. Well, let me ask you, in this posture, let me ask you if we have the board decision, and we read it a little differently, but then the government, you know, reads it credibly another way, does that mean that there's a waiver by the government on the nexus challenge, and we should just leave it at that? No, I would not say that. Basically, I think what we're saying is that we don't think that the board reached that issue and basically just went on the other part of the analysis, does it rise to the level of, you know, the things that they're claiming, either did it happen or did it rise to the level of, basically. That part of the analysis is still there. I understand your position. And therefore, I mean, because they didn't agree with the one-year bar or, no, they agreed, they didn't disagree, and so the one-year bar doesn't apply in this case. But with regard to the unaccounted part, we think that they didn't reach that, they just reached the other part. So if the court disagrees with us on the, does it rise to the level of, we urge the court, and it needs to reach the unaccounted, we urge the court then to remand to the board for them to reach that issue. Well, let me ask you on the does it rise to the level of issue. Okay. If the words the judge used, it's possible that the father would beat him and that might happen, and if that didn't rise to the level of likelihood, but did rise to the level of a well-grounded fear, why do you think that's the case? The testimony of, or that statement by the immigration judge, why wouldn't that support a well-founded fear? I don't remember him saying that it rose to the level of well-founded fear. They didn't say that one way or the other. I'm just saying, isn't that, isn't that testimony that he gave and then the judge's summary and conclusion about saying, yeah, the father might beat him, why isn't that a well-founded fear? Because he didn't show, other than he had a subjective fear apparently, but he didn't show by any independent type of proof that the beating would be so severe that it would rise to the level of persecution. Even in this country, we have parental discipline. This may be a little bit more, you know, severe form. It doesn't mean it's necessarily extreme form that rises to the level of persecution. He presented no other independent evidence. There's nothing in the country reports about this type of stuff, and therefore, it's his burden to show he has a well-founded fear, and we believe he hasn't met that. But I could suggest that the father would beat him, and then you might put him into a mental institution. I think I might be, have a well-founded fear if I thought my dad was going to do that. Well, you may have a subjective fear, but it doesn't mean it's subjectively well-founded. Well, I mean, I think that's what the judge said. He discounted the mental thing, saying, come on, that's far-fetched. But he seemed to say that he would potentially beat him in a way that's not tolerated either in that country or our country by using special rubber whips made out of automotive belts. Right. So that seemed to me, apart from the mental institution, that's a fairly severe. Automotive belt and the belts that some people use in this country, it's not necessarily the type of instrument. It's whether it goes to, is it so severe that it rises to the level of persecution. People can be harmed in this country with belts, too. But the question is, is it that high of a level? Well, I just want to make this comment to the government. In light of your position, you've convinced me that we should remand to the board and ask them to explain what their position is on the unaccounted grant. But putting your litigating position aside, I would certainly have read the BIA's opinion on, as adopting pages 17 and 20, which explicitly say three times, twice on page 17 and then once on page 20. On page 20, it says, failed to establish a well-founded fear based on any of the five grounds. I would have read that as embracing the unaccounted issue. Because I'm not aware of any requirement that the board be wordy in what it does. And we see an awful lot of opinions where they take a position in a sentence or two. And so I'm mystified by the government's position here. Unless there's some off-the-record discussion with it, you've got some inside dope on the case. But basically, in light of the government's argument, I'm going to support a remand to try to get the board to clarify. I don't know what my colleagues will think about this. Well, we've got to look at the jurisdiction thing, too, so. Well, if we have jurisdiction. Who knows where we'll end up. Are confusing cases. And we recognize that you're stuck with the record they give you. You didn't make it. And these are difficult cases, the records. What's bothering me is I thought in many cases the board, and maybe there's something I don't understand about their procedure, but I thought often they could adopt a conclusion, or they might agree with a conclusion, but they don't want to into all of the reasoning and adopt that. That's true. Maybe because they don't have time to study it, or they're just not going to do it, or they disagree with part of it. That's why I was reading this this morning, and maybe I'm wrong. Well, that's true, and I guess I could be wrong as well. Well, anyway, we'll, I guess we have to figure out. We'll figure it out. Thank you. Thanks very much. Short time for rebuttal. Yes. Thank you. On the jurisdictional issue, I would suggest that the Court, to the Court that Ruiz-Morales and Unua Kauulu are not inconsistent. The issue addressed and dealt with by the Court in Ruiz-Morales deals only with whether the offense in that case was an aggravated felony. And succinctly, the Court says in Ruiz-Morales, because we find there is an aggravated felony, we have no jurisdiction. We don't even know whether the jurisdictional issue was briefed. It is not incumbent on the Court to find that there is a difference of opinion. The two cases can be resolved. Thank you. The case of Favee v. Ashcroft is submitted, following argument, and we'll next hear
judges: B. Fletcher, McKeown, Gould